UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL B. DORSEY,
    Plaintiff

v.

ENTERPRISE LEASING, *et al.*,
    Defendants

Civil Action No. 14-800 (CKK)

MEMORANDUM OPINION
(January 26, 2015)

      Plaintiff Michael Dorsey, proceeding *pro se*, brought this action against Defendants PNC Bank, N.A., Enterprise Leasing,[1] and Equifax. Before the Court is Defendant PNC Bank, N.A.'s [15] Motion to Dismiss Plaintiff's Complaint. PNC Bank argues that *pro se* Plaintiff's complaint fails to state a claim upon which relief may be granted. While the precise nature of the claims against each defendant is not wholly clear from the pleadings, it appears that Plaintiff claims that, first, PNC Bank improperly allowed money to be taken from Plaintiff's account and, second, PNC Bank failed to protect Plaintiff's personal information when information was leaked in connection with Target/American Express pre-paid cards. Upon consideration of the pleadings,[2]

---

[1] In this action, there has been much confusion about the name and corporate identity of Defendant Enterprise. Because Enterprise is not the subject of the motion that the Court is currently considering, the Court simply refers to this defendant as "Enterprise Leasing" or as "Enterprise" for the purposes of this motion.

[2] The Court's consideration has focused on the following documents:
- Complaint, ECF No. 5-1 ("Compl.");
- Amended Complaint, ECF No. 1-3 ("Am. Compl.");
- PNC Bank, N.A.'s Motion to Dismiss Plaintiff's Complaint, ECF No. 15 ("Mot. to Dismiss");
- Plaintiff's Opp'n to Def.'s Mot. to Dismiss, ECF No. 17 ("Pl.'s Opp'n");
- Plaintiff's Opp'n to Def. PNC's Mot. to Dismiss, ECF No. 21 ("Pl.'s Second Opp'n"); and
- Reply in Support of PNC Bank, N.A.'s Motion to Dismiss Pl.'s Complaint, ECF No. 24 ("PNC Bank's Reply").

the relevant legal authorities, and the record as a whole, the Court GRANTS PNC Bank's [15] Motion to Dismiss. The Court concludes that neither the claim with respect to the improper removal of funds from Plaintiff's account nor the claim regarding Target/American Express pre-paid cards states a claim upon which relief may be granted. Therefore, the Court DISMISSES all claims against Defendant PNC Bank.

## I. BACKGROUND

The facts underlying this case are far from clear, and the Court recites the facts only as they pertain to the Court's resolution of PNC Bank's Motion to Dismiss. For the purposes of this motion, the Court accepts as true the factual allegations in Plaintiff's Complaint.[3] The Court also "consider[s] supplemental material filed by [this] *pro se* litigant in order to clarify the precise claims being urged." *Greenhill v. Spellings,* 482 F.3d 569, 572 (D.C. Cir. 2007). The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

Plaintiff claims that on or about May 2, 2011, PNC Bank improperly allowed money to be taken from his checking account to defray a debt associated with his son. Compl. at 4. Plaintiff does not state the account number or suggest that he is aware of the account number but

---

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

[3] Plaintiff amended his complaint only for the purpose of attempting to name the correct Enterprise entity as a defendant. For all other purposes, Plaintiff incorporated the original complaint. *See* Am. Compl. at 1. Because the motion currently before the Court does not involve the identity of Defendant Enterprise, the Court refers directly to the original Complaint throughout this Memorandum Opinion.

unwilling to provide it in a public document.[4] *See generally id*. Plaintiff claims that this debt was the result of a bogus claim from Equifax, another defendant in this action, which caused him to become a debtor to Enterprise, the third defendant in this action. *Id*. Plaintiff claims that on or about May 2, 2011, Defendant Enterprise charged Plaintiff's Visa card approximately $950 to cover the cost of renting a vehicle that Plaintiff claims he did not rent. *Id.* at 2. It appears that the alleged debit by Enterprise and the removal of money from the PNC account are two sides of the same coin, referring to the same transaction. *See* Pl.'s Opp'n to Def. Enterprise Leasing's Mot. to Dismiss, ECF No. 40 ("Pl.'s Enterprise Opp'n"), at 2. In his Opposition to PNC Bank's motion to dismiss, Plaintiff claims that he reported the erroneous debit between two days and two weeks after the debit occurred. *See* Pl.'s Opp'n at 3-4. He claims that the money was then redeposited into the account. *See id*. Plaintiff also claims that PNC Bank subsequently closed the checking account in question. Compl. at 4.

In addition, Plaintiff claims that PNC Back caused—or failed to prevent—the dissemination of his personal information when information was leaked in connection with Target/American Express pre-paid cards. Compl. at 4.

---

[4] PNC Bank attached to its motion to dismiss redacted statements for Plaintiff's bank account covering the period from February 25, 2011, to July 27, 2011, which includes the date of the alleged improper transaction. Because PNC bank filed only a motion to dismiss and not a motion for summary judgment, the Court does not rely on those statements. However, the Court notes that those statements show no withdrawal (or redeposit) of an amount that approximates the $950 that Plaintiff claims was wrongfully debited. *See* Mot. to Dismiss, Ex. 1. Furthermore, the only transaction shown on May 2, 2011, the alleged date of the wrongful debit, was a $44.56 purchase at Giant Food in Washington, D.C. *See id.*, Ex. 1 at 5. Plaintiff responds, "The account that they referred to is open, but it is not the account of the transaction as the evidence at a trial after discovery will corroborate." Pl.'s Opp'n at 4. However, Plaintiff neither provides any details about an alternative account, such as an account number, nor claims that he could provide those details. *See id*. The Court presumes that Plaintiff would at least be able to provide the account number for his bank account.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While a "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), nonetheless, a "*pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Defendant PNC Bank presents several arguments in favor of the dismissal of the complaint. The Court first discusses the arguments pertaining to the alleged improper removal of funds from his bank account and then discusses the arguments pertaining to the claim regarding Target/American Express pre-paid cards. The Court concludes that the Complaint fails to state a claim under which relief may be granted with respect to either claim against PNC Bank.

**A.  Improper Removal of Funds**

As an initial matter, the Court notes that Plaintiff presents no common law legal theories or any statutes that might be the basis for his claims—even legal theories presented in the

4

language of a layperson. The Court is left guessing, as was PNC Bank, what claims Plaintiff might be making based on the scant facts he presented regarding PNC Bank. In its motion to dismiss, PNC Bank identified two legal theories that could possibly be the basis for Plaintiff's claim, the federal Electronic Funds Transfer Act ("EFTA"), codified at 15 U.S.C.§ 1693 *et seq.*, and Articles 3 and 4 of the District of Columbia Uniform Commercial Code ("D.C. U.C.C."), D.C. Code § 28:3-102(a); D.C. Code § 28:3-104. Plaintiff appears to conflate some of the arguments with respect to these two possible legal bases, *see* Pl.'s Opp'n at 3-4, but Plaintiff nonetheless responds to PNC Bank's arguments with respect to each legal theory, including an explicit reference to the EFTA and a citation to a case that discusses the D.C. U.C.C., *see id.* at 3-4. By contrast, Plaintiff does not argue that there are other legal bases for his claims against PNC Bank.

The Court first addresses PNC Bank's arguments with respect to the Complaint insofar as Plaintiff possibly alleges a violation of the EFTA. "EFTA creates a 'framework [of] rights, liabilities, and responsibilities of participants in electronic fund transfer systems.' " *Wike v. Vertrue, Inc.*, 566 F.3d 590, 592 (6th Cir. 2009) (quoting 15 U.S.C. § 1693(a)). "The statute covers a wide range of electronic money transfers—from ATM withdrawals and debit-card payments to banking by phone—and subjects them to a litany of procedural requirements designed to protect consumers from transactions made in error or without their consent." *Id.* A consumer must file an EFTA action in court "within one year from the date of the occurrence of the violation." *Id.* (quoting 15 U.S.C. § 1693m(g)) (quotation marks omitted); *accord Peters v. Riggs Nat. Bank, N.A.*, 942 A.2d 1163, 1171 (D.C. 2008). While it is unclear whether the one-year statute of limitations of the EFTA incorporates a discovery rule, *see Wike*, 566 F.3d at 596, Plaintiff states that he reported the matter within "two days to two weeks from the time that the

debit was made to the account."[5] Pl.'s Opp'n at 4. As the alleged debit occurred on or about May 2, 2011, Plaintiff's response demonstrates that he was aware of the debit not much later than the end of May 2011. Given that the Superior Court complaint was not filed until April 3, 2014—almost three years after the alleged improper debit—the one-year limitations period had long since elapsed. For this reason, Plaintiff's Complaint fails to state a claim pursuant to the EFTA. Accordingly, the Court need not address whether, even if he had complied with the statute of limitations, his complaint would state a claim under the EFTA.

Next, the Court addresses the Complaint insofar as it possibly alleges a claim pursuant to the D.C. U.C.C. At the outset, the Court notes that Plaintiff never refers to the D.C. U.C.C. explicitly,[6] and it appears that PNC Bank merely presents an argument regarding this theory in an abundance of caution. The Court need not reach PNC Bank's argument that a U.C.C. claim is barred by the D.C. U.C.C.'s notice requirement,[7] because of a more fundamental problem: the facts presented are inconsistent with a possible U.C.C. claim. "Articles 3 and 4 of D.C. Code, Commercial Law and Transactions ('U.C.C.') apply to negotiable instruments, including checks." *Peters*, 942 A.2d at 1166 (citing D.C. Code §§ 28:3-102(a), 28:3–104 (2001)). Although the D.C. Court of Appeals has not explicitly decided whether the version of the U.C.C. that D.C.

---

[5] Plaintiff appears to conflate the issue of the *statute of limitations* under the EFTA with the requirement of timely *notice* to the financial institution under the D.C. U.C.C. *See* Pl.'s Opp'n at 3-4. In any event, Plaintiff's response confirms that he was aware of the alleged debit shortly after he claims that it occurred.

[6] The Court notes that Plaintiff, in his Opposition, cites a case previously cited by PNC Bank in its motion to dismiss, *Peters v. Riggs Nat. Bank, N.A.*, 942 A.2d 1163, 1171 (D.C. 2008), which discusses both the EFTA and the D.C. U.C.C.

[7] The D.C. U.C.C. establishes "an absolute notice requirement for customers as a pre-requisite to bringing any claim against the bank." *Peters*, 942 A.2d at 1167. A customer must notify the relevant bank within one year of his receipt of a bank statement showing the challenged transaction. *See id*. Defendant argues that Plaintiff failed to provide such notice, but Plaintiff responds that he notified the bank between two days and two weeks after the debit was made, Pl.'s Opp'n at 3-4, well within one year of the alleged transaction.

has adopted covers electronic transactions, "[t]he overwhelming majority of courts that have considered this issue have refused to apply the U.C.C. to the type of electronic funds transfers involved in this case." *Cumis Ins. Soc., Inc. v. Munoz*, No. 94-1071 (WBB), 1996 WL 496982, at *2 (D.D.C. Aug. 28, 1996); *see also Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 585 (E.D. Pa. 2004) (citing cases); *Harber v. Leader Fed. Bank for Sav.*, 159 S.W.3d 545, 551 (Tenn. Ct. App. 2004) (citing cases).

In discussing the alleged improper withdrawal, Plaintiff repeatedly uses language that indicates an electronic transaction, and he never uses language that suggests malfeasance relating to a check or other negotiable instrument.[8] *See* Compl. at 2 ("Enterprise deliberately charged the Visa card of Plaintiff."); *id.* at 3 ("The plaintiff did not authorize the defendant to access or otherwise charge anything to his Visa card"); *id.* ("Equifax … withheld $950 from this plaintiff's visa card when the card was not the subject of a bona fide covenant … "); Pl.'s Opp'n at 4 ("the duty to report the matter was performed within approximately two days to two weeks from the time the debit was made to the account"). Plaintiff later denied that his debit card or credit card was used in the alleged improper transaction. Pl.'s Enterprise Opp'n at 2 ("A major error in counsel's response is the fact that he believes the case came because this petitioner's credit or debit card was used in a transaction by Defendant Enterprise."). But in denying that one of his *cards* was used, he continues to use language indicating an electronic transaction rather than

---

[8] The D.C. U.C.C. defines a negotiable instrument as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) Is payable on demand or at a definite time; and (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor." D.C. Code § 28:3-104.

suggesting the use of a check or other negotiable instrument. *See id.* ("The charge in this case is that this petitioner's checking account at PNC Bank was debited by fraud via a transaction by the defendants in this case - - and that the transaction was not employed via a the petitioner's credit or debit card, as counsel claims. The transaction was performed when a debit (not use of a card) was made to the PNC checking account[.]"). Reading all of Plaintiff's statements together and making all reasonable inferences in Plaintiff's favor, it appears that Plaintiff alleges that money was removed from his account through some sort of electronic transaction, perhaps through the use of a debit card *number*, without a physical credit or debit *card*. Plaintiff never gives any indication that the alleged transaction occurred by check or other negotiable instrument. Because electronic fund transfers or withdrawals are not covered by the D.C. U.C.C., the Court concludes that the Complaint does not state a claim under the U.C.C.

Beyond claims pursuant to the EFTA and to the D.C. U.C.C., the Court is not aware of any other basis for relief based on the allegations in the Complaint. Once again, the Court notes that, in his Opposition, Plaintiff responds to PNC Bank's arguments with respect to the two legal theories that PNC Bank infers may be the basis for the Complaint, but Plaintiff does not suggest that other theories serve as the proper basis for his claims. Even though the Court is bound to construe *pro se* Plaintiff's Complaint liberally, *see Erickson*, 551 U.S. at 94, the Complaint is notably lacking in relevant facts with respect to PNC Bank. To succeed at the motion to dismiss stage, given that the Court has already concluded that the facts do not support a claim pursuant to the EFTA or pursuant to the D.C. U.C.C., Plaintiff must do more than simply claim that PNC Bank caused an unknown debit to an unidentified account on or about May 2, 2011. Ultimately, Plaintiff has not pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Because the facts,

as pleaded, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the Court concludes the Complaint fails to state a claim under which relief may be granted with respect to the allegations pertaining to an improper debit from his bank account.

**B. Target/American Express Pre-paid Cards**

Plaintiff claims that PNC Bank is responsible for the dissemination of private information pertaining to him as a result of a leak of data in connection with Target/American Express pre-paid cards. Plaintiff does not present any theory of liability with respect to this claim in the Complaint and, because he does not respond in his Opposition to PNC Bank's arguments with respect to this claim, the Opposition does not shed any additional light on possible legal theories behind this claim. PNC Bank does not even hazard a guess as to a theory of liability regarding this claim—as they had done with respect to the electronic funds claim. The Court is left without any guideposts as to possible theories of liability. In that context, PNC Bank argues, first, that Plaintiff has not alleged any link between PNC Bank and either Target or American Express and, second, that Plaintiff has not pleaded any non-conclusory facts that would suggest a plausible claim for relief. Because Plaintiff did not respond to PNC Bank's arguments regarding this claim in his Opposition, the Court could treat those arguments as conceded. Nevertheless, the Court addresses those claims in the interest of completeness.

The entirety of Plaintiff's claim regarding the pre-paid cards is as follows:

> On or about November, 2013, Defendant PNC caused and did not take care to protect the personal information of this petition when they allowed and caused to be revealed the personal information of this petitioner when information was leaked from Target/American Express pre-paid card [sic] cards.

9

Compl. at 4. Plaintiff does not suggest any nexus between the alleged leaking of his personal information in connection with pre-paid cards and the actions of PNC Bank, whether pertaining to the alleged improper debit or otherwise. The statement that PNC "caused and did not take care to protect" his personal information is merely a conclusory allegation that does not suggest a plausible entitlement to relief. *See Twombly*, 550 U.S. at 570. Plaintiff's filings say nothing about how PNC's activities caused the dissemination of his information or how the bank would have acted otherwise in order to protect his information from being leaked. Plaintiff does not suggest any connection between PNC Bank and either Target or American Express pre-paid cards. Nor is the Court aware of any possible connections between them. PNC Bank is a bank that offers debit, credit, and pre-paid cards through Visa. American Express is a company that offers credit cards, charge cards, and pre-paid cards without an association with PNC Bank or other banks. Target is yet a third company, a retail company that offers credit cards and debit cards.[9] In sum, Plaintiff has not suggested any wrongdoing by PNC Bank that could have led to the wrongful dissemination of Plaintiff's private information as a result of a leak linked to Target/American Express pre-paid cards. Accordingly, the Complaint fails to state a claim under which relief may be granted with respect to the claim regarding Target/American Express pre-paid cards.

## IV. CONCLUSION

For the foregoing reasons, Defendant PNC Bank, N.A's [15] Motion to Dismiss Plaintiff's Complaint is GRANTED. The Court concludes that Plaintiff's Complaint fails to state

---

[9] It appears that Target credit cards are offered through TD Bank USA, N.A. See http://www.target.com/redcard/main, last visited January 26, 2015. The Court is not aware of any connections between PNC Bank and TD Bank USA, N.A. Nor has Plaintiff alleged any such connections.

a claim with respect to PNC Bank. Accordingly, all claims against PNC Bank are DISMISSED WITH PREJUDICE. An appropriate Order accompanies this Memorandum Opinion.

Dated: January 26, 2015

                                                    /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge